# CASES

# SUPREME JUDICIAL COURT,

# COUNTY OF KENNEBEC.

ARGUED AT JUNE TERM, 1846.

FRANKLIN BANK *versus* OTIS SMALL.

Where an attachment of additional personal property was made upon a writ by the direction of persons liable upon the note in suit, but not parties to the action, and the officer declined to make a return of the attachment unless the property was receipted for by a receipter approved by them, and such receipter was procured by them, and the return of the attachment made, and afterwards, the plaintiff, finding the return of the attachment upon the writ, but having no knowledge of the circumstances under which the attachment was made, claimed the benefit of it, *it was held*, that the officer was responsible to the plaintiff for the safe keeping of the property, so that the same might be taken on execution to satisfy the judgment.

CASE against the defendant, late sheriff of the county of Penobscot, for the neglect of one of his deputies in not having kept safely certain pine mill logs, attached by him on a writ in favor of the plaintiffs against Dwinell and Tibbets, so that they might be taken on execution for the satisfaction of the judgment recovered in that suit. The suit in which the attachment was made, was upon a note made by Dwinell and Tibbets and Sinclair to M. P. Norton, and indorsed by Norton to the plaintiffs. On April 22, 1837, Haynes, the deputy of the defendant, attached real estate and bank shares. On May

3, 1837, Haynes attached as the property of Dwinell and Tibbets, "pine mill logs, sufficient to make four hundred thousand of boards," describing the place where they were and the marks upon them.

Sinclair, called by the defendant, testified, that he was present when the logs were attached; that Haynes refused to attach them, unless they could be receipted for, by some person, satisfactory to the plaintiffs; that M. P. Norton, was present, and another gentleman whom he did not know; that, being on the note, he was anxious to have it secured by an attachment of the property of Dwinell and Tibbets, and he pointed out the logs, and in order to cause the attachment to be made, he obtained Rufus Dwinell to receipt for them; that Norton and the other gentleman agreed to take his receipt; and thereupon Haynes consented to make the attachment of the logs.

There was evidence tending to show, that at the time of the attachment there was a lien upon the logs for the payment of the stumpage.

The defendant contended, at the trial before SHEPLEY J. that if the logs were under a lien at the time of the attachment, that they were not attachable as the property of the debtors, unless the plaintiffs or the officer, should first pay or tender payment, of the amount for which they were thus holden. The Judge instructed the jury, that although such lien might exist, still if the owners of the land did not interfere to prevent the attachment, if they allowed it to be made, if they never interfered to take the whole of the lumber, but only as much of it as would pay the amount due to them, and the rest was left in the hands of the officer, he could not interpose the lien of the owners, but would be liable for the amount of the property left in his hands.

The defendant also contended, that as the deputy only consented to attach and did attach the logs upon the consideration, that they should be receipted for by Rufus Dwinell, not having been directed to make said attachment by the plaintiffs, as this was assented to by Norton, who was holden on the note,

and by some other person who was present, aiding and directing therein, and as the plaintiffs had claimed the benefit of the attachment, made under such circumstances, and as Rufus Dwinell did receipt for the logs, the defendant was not responsible for the safe keeping of them. The Judge instructed the jury, that there was no proof, that the plaintiffs, or any authorized agent of the plaintiffs, ever assented to this agreement, and that it constituted no defence to the suit. And he further instructed them, that if any lien did exist upon the logs, which was enforced upon them, or upon the boards sawed from them, it should be deducted from the value of the logs at the time of the demand made for them. The jury returned a verdict for the plaintiffs, and the defendant filed exceptions to the ruling and instructions of the presiding Judge, and also filed a motion for a new trial, because the verdict was against the evidence.

*Evans* argued for the defendant — and

*Wells*, for the plaintiffs.

The opinion of the Court was drawn up by

WHITMAN C. J. — The Judge, at the trial, ruled, that there was no evidence, that the plaintiffs agreed, that Rufus Dwinell's receipt, for the property attached, should be taken by the defendant's deputy; and we do not see how he could have ruled otherwise. It was not in evidence that it had been done by their attorney in the action. Norton and Sinclair, who induced the deputy to make the attachment, were not the agents of the plaintiffs. They were both on the note in suit, one as promisor, and the other as indorser, and interested in having the debt secured from the property of Tibbets and Dwinell. In what they did, they acted independently of the plaintiffs, and with a single view to their own interests. The plaintiffs do not appear to have had any knowledge of their interference; and much less, is there any reason to suppose that they knew of any receipt taken for the property attached. It would seem that, finding the deputy had made the attachment by recurrence to his return, they required him to have it forthcoming to satisfy the execution, which they subsequently obtained.

The argument, that the plaintiffs, by availing themselves of the attachment, became affected by all the incidents attending the making of it, is not well founded. Such incidents, further than appeared in the deputy's return, were affairs exclusively between him and Norton and Sinclair; as much so, as if any stranger to the suit had, by his interference, induced the deputy to do the same or similar acts.

As to the motion for a new trial, there is more ground for dissatisfaction with the decision. The complaint is, that the verdict is against evidence, or the weight of evidence. Its amount cannot be accounted for, but by supposing that the jury must have disregarded the defence set up, that the logs attached were encumbered, at the time, by what is called a lien, in behalf of the proprietors of the land, from which the timber was cut, for the value of it, as it was, when standing; which had been agreed to be at the rate of four dollars per thousand feet. And it has been surmised, that the jury were induced to do so, upon the supposition, that no such lien could exist, unless the permit of the proprietors to cut the timber, was in writing, with a reservation therein, of such lien; which is but a refusal on the part of the proprietors to part with their property in the timber, to the persons cutting it, till paid for its value as when standing. However it may have occurred, that they did so disregard the lien, is, perhaps immaterial, pro-vided the evidence was such that they should not have disre-garded it; and provided, also, it can be clearly ascertained that they did disregard it.

That they must have disregarded it, would seem to be satis-factorily inferable from the following data. None of the testimony can fairly be considered as estimating the value of the timber, when demanded of the deputy, who attached it, as it was, when cut and hauled and turned into the Penobscot river, at more that six dollars per thousand feet; and the quan-tity got into the river did not exceed 465 thousand feet. The value of the timber, in such case, could have amounted to only $2790. The amount of the lien, as subsequently en-forced by the agent of the proprietors of the land, was not less than $1965. This would leave but $825, for the net

value of the timber, which, with interest thereon from the time of demand upon the deputy, to the time of trial, would have amounted to not exceeding twelve hundred dollars, where-as the verdict returned was for $3185,32.

The next question is; should the jury, from the evidence, have been satisfied, that the timber, when attached, was encumbered with the lien.   It is believed to be quite a matter of notoriety, that proprietors of timber lands seldom, if ever, grant permits to cut timber on their land, without previous payment, or good security therefor, unless with a reservation of the lien for the value.   Indeed, it may be regarded as seldom, that any other security is ever obtained or relied upon.   And a proprietor, and especially an agent of a proprietor, would be regarded as acting very indiscreetly in omitting to be so secured.   Hence it might, upon slight evidence, be believed that such precaution had been taken.   But, independent of any such presumption, the evidence in this case was such, that it would seem to have been unquestionable, that the permission had been granted with the usual reservation of the right of lien ; and that it had been enforced by the agent of the proprietors.   Wadleigh, one of their agents, is positive, that, in granting the permit, whether it was verbal or in writing, the right of lien was reserved. Luther Dwinell says the permit was in writing, and in possession of himself and his partner for more than a year, though now lost; and that the right of lien was reserved in it. And Sinclair says, if the permit was in writing, it contained the reservation.   And Wadleigh and Sinclair both, have the impression that the permit was in writing.   And Bennet, and some of the other witnesses, speak unequivocally to the enforcement of the lien as reserved.   With such a mass of evidence, all directly tending to establish the existence of the lien, and its enforcement, we think the jury should not have hesitated to admit it ; and whether the reservation was in writing or by verbal agreement, was unimportant.   We think, also, that there cannot reasonably be a doubt, that the jury, by some means or other, were induced to think it inadmissible.

*Exceptions overruled ; but a new trial*
*granted upon the motion filed.*